EDWARDS, Senior Circuit Judge,
concurring:
I am pleased to join the opinion for the court. I write separately to respond briefly to Appellants’ claim that they have been stigmatized. I fully understand the personal and professional concerns raised by Appellants, but I am unpersuaded by their legal argument.
Appellants contend that “[t]he District Court ‘adjudicated]’ [them] in contempt because it believed that their purported failure to comply with the January 21, 2009 order was ‘outrageous’ and ‘not acceptable.’ ” Opening Br. of Appellants at 25. According to Appellants, the comments of the District Court “are the hallmarks of a punitive [criminal] contempt order.” Id. As the opinion for the court makes clear, this claim is without merit.
Given the fallacy of Appellants’ principal claim, the disposition of this case does not seem difficult. On the record before us, there can be little doubt that Appellants were cited for civil, not criminal, contempt. It is also noteworthy that Appellants “are not arguing that they were improperly held in civil, as opposed to criminal, contempt.” Reply Br. at 12 n. 3. Therefore, “[b]ecause the contempt has been purged, the issue presented by appellants] is moot.” United States v. Griffin, 816 F.2d 1, 7 n. 4 (D.C.Cir.1987) (citation omitted). One wonders, then, why Appellants have pursued this appeal.
*1278 During oral argument, Appellants’ counsel essentially claimed that Appellants were seriously stigmatized by the strong words used by the District Court and that this stigma has impaired their good standing in the legal profession. Counsel went so far as to suggest that, going forward, Appellants will be required to list themselves as criminal contemnors on state bar reports, personnel records, and job applications. As I understand their argument, Appellants seem to believe that, because the stigmatizing effects of their contempt citations are so great, “the contempt finding here was unmistakably punitive— and therefore criminal — in nature.” Opening Br. of Appellants at 26. They want their day in court, in an adjudication over what they believe are citations for criminal contempt, to clear their names. I understand Appellants’ apparent desire for public vindication, for I certainly know that no responsible member of the legal profession relishes being accused of “outrageous” and “[unjacceptable” conduct in judicial proceedings. Indeed, no good attorney looks to be publicly accused of failing in her or his professional responsibilities, whether or not the accusation arises in the context of a contempt citation. The problem here is that Appellants’ argument is a classic non sequitur. There is no viable connection between the premise of Appellants’ argument — ie., they were seriously stigmatized by a strong judicial admonition — and their conclusion — ie., they were held in criminal contempt.
First, to clarify this on the record, it simply cannot be so that, following the issuance of our judgment in this case, Appellants will be required to list themselves as criminal contemnors on state bar reports, personnel records, job applications, or any other such papers. Such a disclosure would be a fabrication. Our decision in this case confirms, once and for all, that Appellants’ conduct in this case did not result in a finding of criminal contempt. Therefore, Appellants can never face the opprobrium that might have come had they been held in criminal contempt.
Second, Appellants’ concerns over the possible stigmatizing effects of the civil contempt citations are undoubtedly serious and sincere. But these concerns surely cannot, without more, support their position. The record in this case shows, without much doubt, that the District Court clearly did not intend to “punish” the Appellants for “failing to comply” with the court’s orders. Cobell v. Norton, 334 F.3d 1128, 1147 (D.C.Cir.2003) (citation and internal quotation marks omitted). Nor was the District Court principally concerned with vindicating its own authority, see Int’l Union, United Mine Workers v. Bagwell, 512 U.S. 821, 828, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994), when it held Appellants in contempt on February 13, 2009; rather, the court was seeking to compel the production of documents pursuant to its January 21, 2009 order. Everything that the District Court did following the issuance of its February 13, 2009 order confirmed this. Save for the civil contempt citations, which obviously served to coerce the production of the disputed documents, Appellants were never sanctioned for the delayed production of documents.
Finally, as the opinion for the court notes, it is no answer for Appellants to complain that the District Court left the contempt citations standing for an unduly long period of time after the Department of Justice complied with the court’s January 21, 2009 order. Appellants could have acted to resolve the situation by simply filing a motion with the District Court seeking clarification on sanctions. Indeed, it seems ironic that Appellants never sought clarification even as they seemingly felt that the unresolved civil contempt citations further stigmatized their professional *1279 reputations beyond the initial effects of the strong words used by the District Court when the citations were issued. Appellants may have had what they felt were good reasons for avoiding further interactions with the District Court during the pendency of the criminal trial. But the District Court cannot be blamed for Appellants’ failure to seek clarification, if this was a matter of serious concern to them. I do not take Appellants’ concerns lightly, but I find no support for their claim that the District Court’s delay in lifting the contempt finding made them criminal contemnors in the eyes of the law.